Next case this morning is 23-7086 United States v. Barrett, counsel for appellant if you would like to make your appearance and proceed, please. Howard Pincus May it please the court, my name is Howard Pincus from the Federal Public Defender and I represent Kenneth Barrett. At Mr. Barrett's 2005 trial, the district court relied on section 924C's residual clause to hold that 18 U.S.C. 848E1B is a crime of violence and could support a 924C conviction. This was error under United States v. Davis, which held that the residual clause is unconstitutionally vague. And because section 848 offense can now be committed with a mental state insufficient to satisfy 924C's elements clause, Mr. Barrett is entitled to relief. Although the record is silent on whether the district court relied on the residual clause when it held at Mr. Barrett's 2005 trial that section 848E is a crime of violence as a matter of law, the background law shows it must have. At that time, under this court's decision in United States v. Perez Vargas, causing injury by indirect means did not qualify as the use of physical force necessary for an elements clause like section 924C's. The very examples of Perez Vargas of placing a barrier in front of a car or exposing someone to hazardous chemicals could kill a law enforcement officer as required by section 848E. So would you say cause doesn't satisfy the requirements we need, even admitting that if you assume that intentionality also is an adverb to the word cause? That's true on the physical force element, which is what I'm arguing with respect to what the court did in 2005 and why it must have relied on residual clause. Once there is Davis error, we look to current law, and that's when we get into what state of mind is required by section 840E. The use of force, intentional or not, can be, could be, could have been under Perez Vargas, which of course has now been overruled, but in 2005 it had just been issued. It could have been the placing of a barrier in front of a car. It could have been exposing somebody to dangerous chemicals, which could cause injury and death, and therefore could kill, and that would not be the physical force that 924C requires as an element. I understood Judge Ebel, perhaps incorrectly, to be focusing on the harmless error piece, the mens rea piece, and what does cause mean in that context in terms of the other language? It was the chief, yeah. I apologize, and I was, I, you know, it's certainly, that's what I'm going to turn to now. It's our burden, of course, to prove by preponderance that the district court relied on the residual clause in order to show that there was Davis error, and then it's the government's burden to show that it's harmless in this situation. I get it, but my interest right now is on the harmlessness piece, and so if you'll talk about that, please. Absolutely. What significance should we attach to cause in that context when, and I think about Smith, and Smith's reference to the fact that a background principle is that cause has to have a mens rea. I mean, or that, or interpretation of criminal statutes means that you look for a mens rea for terms. Well, I understood from your brief that you took the position that cause doesn't inherently have a mens rea, or does, am I correct on that? You are correct. In 84080, it does not. Okay, well then, as consistent with what Smith did, why are we not then called upon to find what would be the most naturally occurring fitting mens rea for cause in connection with 848, and why shouldn't that conclusion be the same one that the court reached in Smith, which is it is intentionality, because that's what's surrounding it in that particular statute. Well, for a number of reasons. First of all, we look at, we look for mens rea to separate innocent from wrongful conduct, and all of the conduct in 848E is wrongful from the get-go, because the killing has to occur in the context of a drug felony. So we already have somebody who's engaging in wrongful conduct. There's no reason to separate innocent from wrongful conduct, just as, for example, in a felony murder statute, you commit the underlying felony. If the death results, it doesn't, we don't require a mens rea as to that, because you're already doing something illegal. In terms of causes, cause itself, by the plain language of it, doesn't have a meaning of intentionality, as the other verbs in that sequence do. You are relying on the fact that intentionally does not relate to cause.  Would you lose your case if we disagreed with that? If intentionally, well, the whole phrase is in. If it says intentionally kills, counsels, commands, induces, procures, or causes, with no commas or anything, would you lose? If there wasn't a comma, it would be grammatically problematic, but if there wasn't an or, but instead there was a comma, that would be one series. What we have instead is intentionally kills or counsels, commands, induces, procures, or causes. We have intentionally kills separated by or from a verb series, and it's not one series. If it were, the intentionally would carry over. Because it doesn't, intentionally modifies only kills. And we know this even more surely from Section 2, 18 U.S.C. Section 2, which is one of the most used provisions in the Federal Criminal Code. The first four verbs in that verb series, counsels, commands, induces, procures, are in subsection 2A, and in the same order in 848E1B. Causes is in Section 2B of 18 U.S.C., and there it is willfully causes. Congress was obviously pulling the language of Section 2 into 848E1B, and it omitted the modifier willfully. Well, on its face, when I first went through your brief, I found that persuasive. But when you think about it, if Congress felt the need to add the qualifier willfully in Section 2, why doesn't that all the more make it imperative that in the context of 848 that we find a mens rea to attach to cause? In other words, cause can't just sit out there. And if you do that, you're called upon to do the same inquiry that took place in Smith, which is it can't be a null set. You just can't have cause there and have no mens rea. And so if you're going to look for a mens rea, why aren't you looking in Smith? The court said there were three references to intentionality in Barrett. And I'm sorry, in the context of 848. And if that's true, why isn't that the natural mens rea to attach? Well, remember that Section 2B doesn't have somebody acting improperly to begin with as 848E1B and 848E1A in Smith do. You already have somebody who's committing an unlawful act in 848E1B. You don't for Section 2B. And Congress said, well, we have to have a mens rea. It's willfully causes. We don't need that in Section 2A because these other words, these other verbs, commands, counsels, induces, procures, they have an intentionality element inherent in them. Causes doesn't. We need to put something in there. Okay. Wouldn't it be very odd to have all those other words and then just to stick in some brand new concept at the very end without any explanation for it? No, Congress wanted to reach, to be as police protective as possible in 848E1B. And you already have somebody doing something wrongly. So Congress is just listing all the ways that somebody could produce the result of an intentional killing of an officer. Willful causes works because it operates as to people who are in a sufficient position of authority or influence in an organization where when they say something, it may cause an intentional killing. And they are going to be held to that liability. That's what Congress was achieving in 848E1B. So it makes perfect sense. There may be some redundancy there, but there's often redundancy in a list of verbs like in the aiding and abetting statute. A lot of those have overlap. But that's not a problem. Well, then what would be the mens rea if I, as the godfather says, you know, I want you to kill Joe. Well, I want you to teach Joe Blow a lesson. Okay. And then Joe Blow ends up being killed. What's my mens rea in that circumstance? Or do something to Joe or take care of Joe. Well, take care of Joe or what's wrong with teaching him a lesson? That's fine. It doesn't have to have a specific mens rea associated with it. You could be reckless as to the possibility. As long as an intentional killing results. Wait a minute. The other person is liable for the intentional killing and you're liable because you caused it, whether you intended to or not. And that's why it's insufficient under Borden. There's not, at least, there's not something beyond recklessness that's inherent in causes. Causes could be accidental. There does not have to be a specific. I'm sorry to talk over you. There does not have to be a specific mens rea attached to it for criminal liability, you say, because it focuses on what the result is, which is the death of someone. Which is the intentional killing of the law enforcement officer. And it's somebody who's already doing something illegal to begin with. We're not dealing with a statute that says if you cause the intentional killing, you're liable for murder or whatever. And you're liable for whatever penalty. We're not dealing with something that doesn't require some pre-existing criminal conduct. And that's why we don't need a separate mens rea. If this were just something that said somebody who causes the intentional killing of a law enforcement officer is subject to 20 years in prison or life in prison or death, as 848E1B says, then we would need a mens rea. But we don't here. What if the words were spoken with such due care that no reasonable person would take them to mean it was an order to go kill somebody, but the person did it anyway? Guilty.   And that's a, you know, and of course here in determining what happened, I mean not what happened, what the legal result is, we use the categorical approach in this situation under Borden. So if you can cause the intentional killing of a law enforcement officer carelessly, accidentally, recklessly, the statute allows for that. And as a categorical matter, it doesn't suffice under Borden. And that makes Mr. Barrett's conviction under count two a violation, harmful, the Davis-era harmful on that count. And because the government hasn't shown it's not harmful as to count one, we should also get resentencing on that count. Well, you haven't won on count two yet. So why don't we start on count two? If we win, of course. And as it relates to that, on the colloquy that you were having with Judge Carson, the law frowns on strict liability offenses. It has consistently done that. I mean the whole idea that there needs to be some mens rea, it just runs through the law. And I understand this point about separating innocent conduct from other conduct, but what about separating levels of severity of conduct? But we have felony murder, we have death result statutes, we have all kinds of statutes that attach enhanced liability based on the result. And remember again, this is critical, that we already have somebody who's engaging in illegal conduct because they're violating a drug statute at the outset. But felony murder statutes and statutes of that sort, those statutes aren't surrounded, as in this instance, by language of intentionality. I mean the whole context, I mean if you accept the premise that as a general matter, and I understand separating innocent conduct from criminal conduct, but if words are understood in their context, and that's a classic statutory interpretation principle, well the whole context here screams intentionality. I mean why in the world, and I think this is consistent with something Judge Eagle said earlier, why in the world do we now view this word causes as in sitting out there on an island, which is to your point, I'm not saying that couldn't happen, I'm not saying there are statutes that wouldn't allow for that, but in this particular statute, it doesn't sit on an island. But we have intentionally before kills and then separate it and not part of a series. If Congress had wanted to make the verbs in the five verbs that follow the or all take on an intentionality requirement, it could have put intentionally before that. That's an easy fix. It also barred. You're saying intentionally only applies to kills. What if we didn't have anything after counsels? If it says intentionally kills or counsels, wouldn't you agree that intentionally applies to both? Well, if it's just two verbs, perhaps. If it just said kills or counsels intentionally, you would agree intentionally applies to both. That would be a series, separated by the or. If we had intentionally kills, counsels, commands, induces, or causes, you would agree that all applies. Without the comma, yes. But it's separated here, and we not only have that separation, that grammatical text, but we also have section 2B. Which comma do you think does the separating? The one after counsels or the ones after procures? Well, those are all within the verb string. That's right. They're all in a series. They have a different job to do. But in series, sometimes you put a comma before the or and sometimes you don't. But this is intentionally kills or with no comma, no nothing, and then a series of five verbs that are obviously in a series. Let me ask you this, Mr. Pincus. There are, I know those resulting statutes, and I'm thinking of one, and I can't give you the specific statutory citation. But in a case I had where essentially you have somebody who they distribute drugs and death results. The question was, could that person be held liable? The answer in that case was yes, they could. Death resulted. Okay. That statute did not have anything before death. It did not have any qualifier before death. It just said death results. And it occurs to me that that reinforces the notion that there should be some significance associated with the fact that Congress put intentionally before death here. Causes intentional killing. I mean, and so why isn't, you know, all of these other causes and resulting statutes, I would wager, although I don't know right now, most of them don't have that qualifier. And here you have a clear qualifier that suggests that this whole statute is infused with intentionality. Well, the qualifier shows that the person who does the killing, that has to be an intentional killing. But if you cause that, you're liable too. If you're somebody who can cause that result, then you get to be liable too. And that's just a recognition that Congress is trying to reach not just the underlings, but people in positions of authority within an organization. And if it is shorn of any mens rea causes, then under your view, borden is not satisfied. In other words, you cannot, the test of more than recklessness cannot be satisfied. That's correct, because we're looking at the person who causes it, not the person who does the intentional killing. I understand that. And therefore, that person does not have even recklessness. But even if it were recklessness, that doesn't suffice under borden. And as a categorical matter, even though many times somebody can cause the death and it will be intentional, if it can be committed under the language of 848E1B with a lesser mental state, one that doesn't satisfy borden, that means that there is not a qualifying crime of violence here. So you would say that wouldn't be satisfied if you took out all those kind of those strings there and you just simply said intentionally causes the intentional killing. You would say that doesn't have scienter. That's correct. The scienter is supplied by the fact that you have to be engaged in the illegal act, the drug felony act under 848E1B. So that's the scienter. So if, I mean, if Congress is just, if we're only applying this to people who have engaged in a drug felony, I mean, why does Congress care if the killing is intentional? Why aren't they trying to sweep in all deaths caused by that felony in one way or another? Well, they're looking to who does the act to make sure that person is captured. And then they're encompassing in that the, well. Who cares? They're punished. I mean, we're saying that in one instance they want to punish someone who didn't mean for the death to occur. And they could have done it that way if they'd chosen to. But there's nothing irrational about them doing it the way they did. Okay. If there's no further questions, we'd ask the court vacate Mr. Barrett's conviction and sentence on count two. And that it also, because the government has not met its burden of showing that the Davis error did not affect count one, that it also vacate the sentence on count one. Thank you. Morning, Your Honors. May it please the court. Scott Meisler on behalf of the United States. Obviously, the colloquy with my colleague focused on the merits. I just want to remind the court that there are three paths to affirmance in this case. There are two procedural in addition to the merits. We view those as threshold grounds. I won't belabor the point if the court's not interested in them, but. Well, I just would like to make sure whether count one is at play or not here. I had not thought it was. Mr. Pinkus is arguing that it is. I'd like just to sentence your take on that. I don't think it is, Your Honor, for several reasons. One of which is he doesn't have a certificate of appealability. District Court denies COA on that ground. I think he's required one. That's one. Second one is this is not a sentencing package case. Usually, sentencing package cases are where sentences are interdependent. The sentence on multiple counts are interdependent. In this case, this was tried as a death penalty case. In this case, you had a jury recommendation of life imprisonment under 18 U.S.C. 3594. That sentence was binding on the District Court. Unanimous jury recommendation is binding on the District Court. So, again, these are not interdependent. The District Court imposed. It was taken off the table. Okay? I think that's off the table for those reasons alone. That's enough. Thanks. And. I do want to talk about the concurrent sentencing argument. I mean, did you make that argument in the District Court? We did not. Okay. Well, why shouldn't that argument suffer the same fate that it did in Smith, which is that you didn't make it in the District Court, and why shouldn't we deem it to be forfeited now? That's within the court's discretion. It is forfeited. I think on the facts of Smith, the court found two aspects of the procedural posture significant. The government had forfeited it first. Secondly, the government had affirmatively agreed to relief on other counts on a theory that was inconsistent with its concurrent sentencing doctrine and theory on appeal. So it was not just pure forfeiture. It was forfeiture plus almost a feel of estoppel. The government was arguing inconsistently with a position it had taken in the District Court. You don't have that here. The government opposed relief in the District Court consistently, although it did so on grounds other than the concurrent sentencing doctrine. I'd also just mention that in some of the cases that we've cited from outside of this circuit, I believe the Second Circuit's decisions in Al-Awali and Qasir, those were cases where the District Court had not relied on the concurrent sentencing doctrine, and nonetheless the Court of Appeals affirmed based on a version of that doctrine. Well, the other reason that the court cited in Smith was expenditure of judicial resources. And by God, we've expended judicial resources in this case. And Smith talked about below. He talked about above. And that's a reason that you generally apply the concurrent sentencing doctrine. And I take it you would agree that resources have been expended so far, right? They have been, and I'm loathe to criticize the reasoning in Smith because we're going to pivot to relying on it. But I will just say this. I think as a practical matter, almost all the cases where concurrent sentencing is raised in the District Court or on the Court of Appeals, it's raised as an alternative argument. I don't think any competent prosecutor is going to say, I'm resting solely on this and I'm not going to brief to you, Judge, whether this actually qualifies as a crime of violence, whether this defendant is actually entitled to relief and has cleared all applicable procedural bars. So it's always going to be that the parties have to brief it. So I didn't find that particular aspect of Smith particularly convincing. But I think it is within the Court's discretion, Judge Holmes, and we don't rely exclusively on that argument on appeal. Why don't you talk about, if you will, the argument that was made by opposing counsel in the related to Section 2. Because at least on its face, it seems to me, that's a pretty powerful argument because it suggests that causes, that one, in Section 2, a lot of those other verbs were in Section A, I guess, and in Section B, willfully was necessary to modify causes. And it seems to me that supports the notion that causes really doesn't have any work to do in terms of mens rea on its own. I take the point, Your Honor. I think I read it a little bit differently, which is I think in line with some of the questions that Judge Ebell was asking to my opposing counsel. It's that when you might need the word willfully to assure a mens rea in Section 2, because it's 2B, it's separated. It's in a different clause altogether from that first clause of 2B, aids, abets, counsels, commands, procures. Those have a well-settled intentionality requirement in common law and under a long string of Supreme Court cases. So when Congress writes a statute and separates that and says, oh, we're going to do a causation provision in Clause B, they might fear that a court could read it in a strict liability way or as applying a minimal mens rea requirement. So to ensure a mens rea that's commensurate with the common law, traditional understanding of aiding and abetting liability, they put it willfully. You don't need that in a statute that's constructed as is Section 848E here because of the way those words are all, I think as you put it, Your Honor, infused with intentionality. When you have a statute that is bookended with intentionally kills, intentional killing, and to the point about death results provisions, which I think is an interesting comparator, the D.C. Circuit makes this point in Smith. You have some wordings that affect in 848E. It says, on such killing results. But the reference for such killing is the intentional killing. So even when you have Congress resorting back to that language of death resulting, you have it referring back to intentionality. So I think that's the simplest explanation to my mind, Your Honor, is you don't need the willfully because of the way the 848 infuses intentionality through all the verbs. And I think we had an interesting discussion up here about, you know, the commas and whether and how changing the wording slightly could affect the degree to which the word intentional carries across the verb string. But I think if you went with opposing counsel's view of the statute here, it would be almost a unicorn in federal law. I'm just not aware of any example that has been cited in the briefing in this different means of committing the same crime. We do occasionally encounter, in this case as an example, different mens rea applying to different elements of a defense. Intentional killing. You're saying we won't find another statute that has a string of verbs where that string contains verbs that some do require intentionality and some don't. I think you can find it for different elements. So here you've got intentional killing. Some that don't require any mens rea, but others that do. You just won't find that in a statute. I think I haven't seen any that have been cited in the briefs here about applying a different mens rea to various means of satisfying the same element of the crime. Using means in the sort of math sense. Exactly. We understand it now. Exactly. Exactly. Different manners of committing the offense.  Killing or commanding, inducing, prompting the killing would be treated differently. I just haven't seen any examples that were cited in the briefing. And in the one example I think that Mr. Pink has cited in reply, on page 13 of his reply, was a contract law case where it severally allowed the key term by saying or other. Or other. And that's not what Congress meant to do here. They meant to capture just different manners of effectuating intentional killings. So again, Your Honor, we have the merits issue here, which the court would reach if it elects not to exercise its discretion to affirm based on the concurrent sentencing doctrine. And the last procedural point that I'll mention, because it has kind of a jurisdictional threshold flavor under 2255H, is whether the claim here is really based on the residual clause. Whether this is a true Davis constitutional claim or is instead what this court has referred to as poorly disguised statutory claims. And that's tricky because it requires the court to look backwards in time to take what this court has called a snapshot of the moment. And Mr. Pink has referred to the Perez-Vargas case, which came out shortly before trial commenced here. As I read the record, no one cited Perez-Vargas to the district court. And instead, I think what the district court most naturally would have looked to were two things. One is this court's decision from 1992, I think, in United States versus Lujan, where this court had held that an involuntary manslaughter, that manslaughter under California law, unlawful killing of a human being without malice, was clearly an elements clause offense, the court had said. So that, to me, would have been the most on-point case, and especially because in Mr. Barrett's own proposed jury instructions, he said, he quoted only the elements clause and said that the elements clause, sorry, that murder and manslaughter were crimes of violence under the elements clause. Well, the Perez-Vargas was in play in 2005. It was out there. To my knowledge, no one cited it to the district court. Well, that doesn't matter. I mean, we're talking about what would have been the background that the court is presumed to have been aware of, right? Yes, and I think that the court would have had to reconcile two lines of cases from this court. One saying that unlawful killing, even without malice, is a crime of violence, clearly a crime of violence, the court said in Lujan, with the then-recent case in Perez-Vargas, which was not about a homicide statute. To me, it was a Colorado third-degree assault. So the court would have had to extrapolate from that that 848E reaches poisonings, exposure to chemicals, placing a barrier in front of a law enforcement officer. And so you're telling me that, in your view, Perez-Vargas, if it is in play, would not have resolved the situation of that first step of the analysis? Correct. I think it would have been a difficult question. I do agree that 848E reaches those kind of situations. It reaches a poisoning of a law enforcement officer. But that would not have been patented, I think, to a district court. It would have been required to reconcile different lines of cases from this court. And if, as Mr. Pincus conceded, he bears the burden. He has to show more likely than not. So if it's a wash, if you think these cases are a wash and it would have been hard, I don't think he's met that burden. Well, if you sitting here agree that 848E does reach the poisoning situation, why is it a wash? I mean, if you read the examples in Perez-Vargas and you say that 848E would encompass those examples, what would a district court have to do? I mean, it sees what our law is and it sees what it needs to do. What's the problem? I think it would have been an extension of this court's case law, right? It would have had to first decide. Well, Perez-Vargas was an extension of our case law. Correct, but I think it would have been an extension of Perez-Vargas to the distinct category of homicides, crimes, and taking it beyond the sentencing guidelines situation. You have not suggested that we cannot consider their Perez-Vargas argument, right? No, not at all, Your Honor. You can absolutely consider that, but I think you have to look at other aspects of this court's case law beyond Perez-Vargas. And the one thing I'll mention, and I'm hesitant to get into the Mathis territory that Your Honor mentioned, but the one other area of this court's case that weren't super clear in 2005 when this case went to trial was whether and how you apply the modified categorical approach. And so Perez-Vargas itself has a whole preamble suggesting that you can apply the modified categorical approach, meaning you can consider conviction documents to narrow the basis for a prior crime. And Perez-Vargas rested, I think, on the supposition that a court could do so. It was unable to do so, the court said, because the relevant conviction documents were not in the record before it. I think if a court would have read Perez-Vargas and said, I'm in trouble here under the elements clause, let me see if I can narrow the basis for Mr. Barrett's offense, let me look at the conviction records, I think the court would have quickly seen just from the way the indictment is laid out, from the way the jury was instructed, and from the fact that the jury returned special interrogatories, finding that Mr. Barrett committed this crime intentionally, that this was an intentional murder case, it was about intentional murder with a firearm, and that would have ruled out those hypotheticals from Perez-Vargas about placing a barrier in front of someone or exposing them to hazardous chemicals. So I don't think we need this court to go so far down the rabbit hole to consider how the modified categorical approach would have applied in 2005. I'm just saying it's not self-evident, and I think if it's not self-evident and you're at equipoise, then the party that bears the burden of persuasion loses, and that in this case is Mr. Barrett. The last thing I'll say about that, Your Honor, is that Mr. Pincus cites in his foreclosing the use of the modified categorical approach at that time, in the mid-2005s. But again, this court requires a snapshot. Just like I can't look to Delegati and say the elements clause has always meant this reaches intentional causation of bodily injury, I don't think the defense can look to Bowen and say this court's kind of clarification of when and where he used the modified categorical approach at a given time. I don't think he can rely on that. The district court would have had before it, as the most recent case, Perez-Vargas. That case strongly suggests, if not holds, that you can use the modified categorical approach for elements clause determinations. So that's what would have been before the court, and if the court had looked at those conviction documents, the indictment— Let me hit the pause button. Do I understand you to be saying that as it relates to this Bowen case, to the extent that Bowen was saying what the state of the law was in 2005, that the court would—that we should not presume under a snapshot theory that that was the state of the law? Is that your position? I think I'm saying that the district court would not have understood this court's cases as Bowen revised them to say. We're all about the law. And in other words, the bottom line is we engaged in the legal fiction that the state of the law was. And I think of the example of the qualified immunity context, if you have a subsequent case, and that case says, well, in 2005, that's what the law is, then the parties are subject to what that statement is. Yeah. Well, that's a difficult question, Your Honor. I mean, part of my discomfort here is that I think Bowen misread those cases. I'll just be frank with the court. I think Bowen misread the cases on which it relied. So, but I do think— We were fallible, but we do what we can, and that's where we are. I do think you have an issue, and I would direct the court to the way that this court described this snapshot inquiry in Snyder. And so if we, the government, can't rely on what the law should have always been, because when a court construes a statute and it construes the elements clause, it's saying what the law always was, right? And so if Bowen's looking back and saying that this is what the law always was, it's hard to reconcile that with Peres-Vargas, because Peres-Vargas sure seemed to understand that the modified categorical approach was available. And that was the most recent case that the district court would have had before it, if it had actually considered these issues, back in 2005. So for any of those three reasons, concurrent sentencing doctrine 2255H, or on the merits, we would ask that the judgment be affirmed. Thank you. Thank you, counsel. Case is submitted.